## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS,
## HOUSTON DIVISION

| | | |
|---|---|---|
| Carl R. Pruett and Scott Martin, | § | |
| Plaintiffs, | § | |
| | § | |
| versus | § | ACTION NO.  H-03-3241 |
| | § | |
| The Harris County Bail Bond | § | |
| Board and Harris County, | § | |
| Defendants. | § | |

## PLAINTIFFS' POST-REMAND MOTION TO RECOVER PLAINTIFFS' ATTORNEY'S FEES, EXPERT FEES, AND OUT-OF-POCKET EXPENSES UNDER 42 U.S.C. § 1988 OF THE CIVIL RIGHTS ACT

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE KENNETH HOYT:**

Plaintiffs Carl R. Pruett ("Pruett") and Scott Martin ("Martin") (collectively, "Plaintiffs") file this post-remand motion to recover Plaintiffs' Attorney's Fees, Expert Fees, and Out-of-Pocket Expenses under the Civil Rights Act, 42 U.S.C. § 1988.  The Table of Contents that follows this cover page summarizes Plaintiffs' argument and the Index to Authorities cites Plaintiffs' legal authorities.  Plaintiffs also support this request with affidavit testimony from Plaintiffs' lead trial and appellate counsel David A. Furlow and a comprehensive record of relevant exhibits, including, *inter alia,* copies of significant out-of-pocket expenses; Plaintiffs' fee invoices delivered and paid over more than five years; copies of Plaintiffs' motions and responses in the Fifth Circuit and the U.S. Supreme Court; evidence of the fees Plaintiffs incurred in efforts to resolve this case without post-remand hearings; fee awards in contemporaneous First Amendment lawsuits in Texas; and Defendants' discovery responses.

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS...................................................................... i

INDEX TO AUTHORITIES.............................................................. iii

ARGUMENT AND AUTHORITIES....................................................1

**I.** **Defendants Harris County and the Harris County Bail Bond Board zealously defended unconstitutional, anti-competitive statutes resulting from their ally International Fidelity Insurance Company's lobbying of the Texas Legislature**................................................................. 1

**II.** **The Fifth Circuit ruled that Plaintiffs are entitled to recover their reasonable and necessary prevailing-party fees and expenses**................................................. 5

**III.** **Plaintiffs Pruett and Martin present compelling proof of their aggregate fees, hours, and expenses from June of 2003 through the end of August 2008 and seek an award consistent with the Fifth Circuit's Rehearing Opinion**.............. 6

    A.    Plaintiffs present their attorney fee evidence listing fees billed at "historic" rates, at current discounted rates, and at their standard current rates .....................................................................6

    B.    The U.S. Supreme Court has approved fee awards at current rates rather than historic rates in Civil Rights cases ................................................9

    C.    Given Plaintiffs' five victories on appeal and the inextricably interwoven nature of the evidence and issues, this Court should award Plaintiffs all of their Fifth Circuit expenses and 95% of their fees at current rates ...............................................................9

    D.    Plaintiffs won the *certiorari* battle at the U.S. Supreme Court and should recover *all* of their Supreme Court fees and expenses at current rates.................10

    E.    This Court's April 29, 2008 award of $400 per hour rates in the *Ibarra* Case argues for lead-counsel to receive current rates here .....................................11

    F.    Other contemporaneous fee and expense awards support Plaintiffs' request for reimbursement ninety-five (95%) percent of their attorney's fees using current rates and all of their out-of-pocket expenses...........................13

G.    Plaintiffs are entitled to recover prime-rate interest on all of their
out-of-pocket expenses ............................................................................18

**SIGNATURE PAGE** ........................................................................ 19

**CERTIFICATE OF SERVICE** .......................................................... 19

# INDEX TO AUTHORITIES

**Page**

**Cases**

*Alberti v. Klevenhagen,* 896 F.2d 927 (5th Cir.), *vacated in part on other grounds,* 903 F.2d 352 (5th Cir. 1990) ................................................................. 18

*Christiansburg Garment Co. v. EEOC,* 434 U.S. 412 (1978) ............................................... 10

*Harris Cty. Bail Bond Bd. v. Pruett,* 177 S.W.3d 260 (Tex. App.—Houston [1st Dist.] 2005), *aff'd in part and rev'd in part,* 249 S.W.3d 447 (Tex. 2008) ............................ 1

*Hopwood v. Univ. of Tex.,* 999 F.Supp. 872, 919 (W.D. Tex. 1998), *aff'd,* 236 F.3d 256 (5th Cir. 2000), *rhg. and rhg. en banc denied,* 248 F.3d 1141 (5th Cir. 2001), *cert.* denied, 533 U.S. 929 (2001) ........................ 9, 18

*Johnson v. Mississippi,* 606 F.2d 635 (5th Cir. 1979) ........................................................ 17

*Jones v. Texas Tech. Univ.,* 656 F.2d 1137 (5th Cir.1981) ................................................... 10

*Missouri v. Jenkins,* 491 U.S. 274 (1989) ........................................................................... 9

*Myers v. City of W. Monroe,* 211 F.3d 289 (5th Cir. 2000) ................................................... 10

*Newman v. Piggie Park Enterprises,* 390 U.S. 400 (1968) .................................................... 10

*Pennsylvania v. Delaware Valley Citizens Council,* 483 U.S. 711 (1987) .............................. 9

*Plemer v. Parsons-Gilbane,* 713 F.2d 1127 (5th Cir.1983) ................................................... 10

*Pruett v. Harris County Bail Bond Board,* 400 F. Supp. 2d 967 (S.D. 2005) & No. H-03-3241, 2005-U.S. Dist. LEXIS 28745 (S.D. Tex. July 20, 2005), *aff'd in part & rev'd in part,* 499 F.3d 403 (5th Cir. 2007, on rhg.), *cert.denied* No. 07-697, -- U.S. -- , 128 S.Ct. 1227, 170 L.Ed.2d 62 (U.S. 2008) ............................ 1

*Thompson v. Pharmacy Corp. of Am., Inc.,* 334 F.3d 1242 (11th Cir. 2003) ......................... 17

*United States v. Mississippi,* 921 F.2d 604 (5th Cir. 1991, rhg. denied) ................................ 10

*Villano v. City of Boynton Beach*, 254 F.3d 1302 (11th Cir. 2001) ...................................... 17

*Walker v. City of Bogalusa,* 168 F.3d 237, 240 (5th Cir. 1999) ........................................... 16

**Rules of Evidence and Procedure**

FEDERAL RULE OF EVIDENCE 201(d) ................................................................................. 1

**Statutes**

42 U.S.C. § 1983 ...........................................................................................   16

42 U.S.C. § 1988.......................................................................... 5, 6, 10, 16, 17

Texas Occupations Code  § 1704.109(b)..................................................................... 5, 17

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE KENNETH HOYT:

Plaintiffs request recovery of an award of one hundred percent (100%) of their out-of-pocket expenses and ninety-five percent (95%) of their reasonable and necessary fees at current billing rates as authorized by U.S. Supreme Court and Fifth Circuit precedent, consistent with Plaintiffs' success in this Court, the Fifth Circuit, and the U.S. Supreme Court.[1]

I.   **Defendants Harris County and the Harris County Bail Bond Board zealously defended unconstitutional, anti-competitive statutes resulting from their ally International Fidelity Insurance Company's lobbying of the Texas Legislature.**

1.     This case arose because Plaintiffs' business competitors, International Fidelity Insurance Company and Allegheny Casualty Company (collectively "IFIC"), joined with Defendants the Harris County Bail Bond Board and Harris County (collectively "Defendants") to adopt, enforce and defend anti-solicitation advertising and solicitation rules restricting the First and Fourteenth Amendment rights of Plaintiffs and their potential customers.   After Harris County District Court Judges Levi Benton and John Coselli declared those rules unconstitutional, IFIC lobbied the Legislature to enact anti-competitive, unconstitutional statutes to suppress bondsmen-speech, while Defendants zealously defended those statutes in this Court and on appeal.   As First Court of Appeals Justice Sherry Radack recognized, "the Board has shown no valid reason for a rule that squelches competition by prohibiting newcomers to the bail business from competing for that business during the initial 24 hours after arrest."[2]

---

[1] *See Pruett v. Harris County Bail Bond Board,* 400 F. Supp. 2d 967 (S.D. 2005) and No. H-03-3241, 2005-U.S. Dist. LEXIS 28745 (S.D. Tex. July 20, 2005), *aff'd in part & rev'd in part,* 499 F.3d 403 (5th Cir. 2007, on rhg.), *cert. denied,* No. 07-697, -- U.S. -- , 128 S.Ct. 1227, 170 L.Ed.2d 62 (U.S. 2008). Under FED. R. EVID. 201(d), Plaintiffs request this Court to take judicial notice of its own file and the Fifth Circuit's rehearing opinion at 499 F.3d 403 in considering the arguments that follow.

[2] *Harris Cty. Bail Bond Bd. v. Pruett,* 177 S.W.3d 260, 277 (Tex. App.—Houston [1st Dist.] 2005), *aff'd in pertinent part and rev'd in part,* 249 S.W.3d 447, 455-56 (Tex. 2008).

2.      The Texas Attorney General recognized IFIC's anti-competitive agenda and refused to defend the Board's anti-competitive rules in the state court case, or the statutes challenged in this Court, despite Defendants' repeated requests.

3.      As the Record in this Court reveals, IFIC has been the largest single provider of criminal court appearance bonds in Harris County for more than a quarter century; it underwrites twenty-six of eighty county bondsmen.  Based on a growing concern that their telephone calls threatened their domination of the bail bond market, IFIC officers and agents began targeting competitors in 2000.  Its attorneys sued to stop Pruett, Martin, and other bondsmen from calling and sending letters to repeat-business criminal-defense clients who had used IFIC in the past.  IFIC's agents included Clement Romeo and Johnny Nelms.  At the Board's January 10, 2001 meeting, IFIC agent Romeo complained that solicitation "weakens the financial solvency of the bondsmen," noting that "I'm down to seven and a half percent" as his fee for providing a bond because telephoning bondsmen were competing with the prices he charged.  Mr. Romeo urged the Board to "consider it from the financial solvency side."  An IFIC sympathizer at that Board meeting ("Mr. Vannerson") complained of his business rivals' telephone competition:

> There are many of us here in this room who have paid a tremendous amount of money for our advertisement in Southwestern Bell *Yellow Pages*.  And this [solicitation] is a problem, because it has become so effective a way to get people into the office . . . it [solicitation] is the new *Yellow Pages*...

Board member Jack Cato observed that, "You [bondsmen] pay thousands of dollars to Southwestern Bell for *Yellow Pages* [ads]."  At the Board's January 25, 2001 meeting, another bondsman complained about solicitation: "They could do it for $10 cheaper."[3]

4.      IFIC Secretary and General Counsel Roger Moore drafted rules restricting solicitation.  IFIC-agent Nelms then asked the Board to adopt Moore's rules at Board meetings

---

[3] *See, e.g.,* Plaintiffs' Original Complaint and the exhibits attached to same, and Plaintiffs' summary judgment motion, response, and reply filed in 2004 in this Court.

on December 1, 2000 and January 10, 2001.  A petition signed by IFIC agents was the "only petition" the Board considered, according to Ms. Kathy Braddock.  As IFIC requested, the Board adopted anti-solicitation rules.

5.   Pruett filed suit to challenge the unconstitutionality of those first anti-solicitation rules and quickly obtained a T.R.O.  On January 25, 2001, the Board rescinded its rules after Chairman Don Jackson, Assistant County Attorney Sarajane Milligan, and IFIC-agent Romeo expressed concerns that the Board was exceeding its authority by promulgating those rules.

6.   A prominent member of the Board sympathetic to the business interests of IFIC and its agents, Ms. Kathy Braddock, personally urged the Board to adopt anti-competitive, speech-suppressing Local Rules 24 and 25 (the "Rules") on February 14, 2001.  IFIC agent Nelms seconded the motion.  The Board adopted the Rules.  As reflected in the Texas Supreme Court's ruling in the parallel state court appeal, Ms. Braddock did not conduct adequate independent research before rubber-stamping her approval of IFIC's anti-solicitation rules as the Board and County's policy for suppressing bondsman-speech.[4]  She did not commission or rely upon any studies, surveys, or statistics before promulgating the rules.  Nor did she assemble a contemporaneous record to justify restricting speech protected by the First Amendment.  The Board's Minutes thus did not contain a statement identifying the Board's concerns; a study,

---

[4] *See Pruett v. Harris Cty. Bail Bond Bd.,* 249 S.W.3d 447, 455-56 (Tex. 2008).  The Fifth Circuit similarly concluded that Ms. Braddock, the Board's principal expert in this case, had failed to provide competent evidence sufficient to justify the state statutes the Defendants sought to defend and enforce here.  *See Pruett,* 499 F.3d at 414-15 ("Harris County offers an affidavit from an employee of the Harris County District Attorney's Office, Kathleen Braddock, stating that the 24-hour period after arrest is the time during which harassing bond solicitations are the worst and that citizen complaints "declined drastically" after Harris County changed its local rules....This is insufficient evidence to show that the 24-hour rule directly advances state interests...Harris County does not connect the reduction in citizen complaints to the 24-hour rule...Braddock's conclusory statement that solicitation is the worst in the 24-hour period after arrest is insufficient.").

survey, poll, or statistic showing a need for the Rules; discussion of non-censorial means of solving problems; or evidence that the rules would work in resolving the Board's concerns.

7.     Ms. Braddock brought the Board and Harris County into line with IFIC's demands that the Board interpret and enforce anti-competitive Local Rules 24 and 25 against Pruett, National American Insurance Company ("National"), and other competing bondsmen and sureties. As a representative of Harris County District Attorney Charles Rosenthal on the Board, and as the principal proponent of the County's enforcement of anti-competitive rules restricting bondsman speech, Ms. Braddock sought out and brought on the proceedings that resulted in the Board's suspension of Plaintiff Pruett's license in 2002, which resulted in Pruett and National's filing of the parallel state court lawsuit.[5]

8.     Harris County District Judge Levi Benton issued a T.R.O. against enforcement of the Rules after concluding that they violated the First and Fourteenth Amendments. Pruett and National were prepared to compromise the constitutional conflict on the day the case went to Harris County District Court Judge John Coselli's court in February of 2002, but Ms. Braddock convinced the Board to press forward. After lengthy evidentiary proceedings reflected in the state court evidence this Court considered in the parties' cross-motions for summary judgment in this Court in 2005, Judge Coselli enjoined enforcement of the Board's Rules on August 29, 2002.

9.     While Judge Coselli's state court declaratory judgment was on appeal, IFIC lobbyists slipped a stealth amendment into a bill concerning bond forfeitures to hobble competitors. In the absence of testimony and hearings, IFIC's lobbyists convinced a legislator to slip in an amendment that enacted a state version of the Board's anti-solicitation rules while

---

[5] As set forth below and in David A. Furlow's affidavit, Michael Kubosh, a former bondsman-representative on the Board familiar with the anti-competitive effect of the Defendants' restrictions on bondsman-speech, joined with Plaintiffs Pruett and Martin to help fund this litigation when Plaintiff Martin's financial resources proved insufficient.

Democratic Party lawmakers fled to Oklahoma in protest against Tom Delay's redistricting plan. As soon as that new law went into effect, Ms. Braddock warned local bondsmen of her intent to enforce those IFIC-drafted restrictions.

## II. The Fifth Circuit ruled that Plaintiffs are entitled to recover their reasonable and necessary prevailing-party fees and expenses.

10. In the Fifth Circuit, Pruett and Martin won five (5) significant First Amendment victories meriting a substantial attorney's fee award in this case now more than five years old:

(1) affirming this Court's holding that Texas Occupations Code § 1704.109(b)(1)'s restrictions on bondsman speech and advertising about unserved warrants (including phone calls and mailings) are unconstitutional;

(2) affirming this Court's holding about the unconstitutionality of § 1704.109(b)(2)'s restrictions on bondsman speech within 24 hours of arrest/incarceration;

(3) defeating Defendants' Fifth Circuit argument that Plaintiffs' cross-appeal complaining of an inadequate attorney's fee award was "untimely";

(4) vindicating Plaintiffs' right under 42 U.S.C. § 1988, as prevailing parties at trial and on appeal, to reverse the partial award of attorney's fees and costs this Court made in response to Defendants' arguments that they did not owe Plaintiffs a dime in attorney's fees; and

(5) defeating Harris County's effort to avoid liability for fees and costs.

11. In its August 28, 2008 Rehearing Opinion, the Fifth Circuit rejected the Board's rehearing motion and re-emphasized that prevailing parties must recover their fees and expenses.

> [W]e find here that because plaintiffs fully succeeded in the case below, the court's award of "nominal" attorneys' fees to plaintiffs based on defendants' lack of participation in policymaking or regulation of bondsmen was an erroneous interpretation of the special circumstances that the Court in *Hensley* indicates could render an award unjust....
>
> We have held that given the strong policy behind 1988 of awarding fees to prevailing plaintiffs, defendants must make an "extremely strong showing" of special circumstances to avoid paying attorneys' fees and that "the discretion to deny § 1988 fees is . . . extremely narrow." That a defendant does not promulgate a policy does not eliminate the costs the plaintiff had to bear in securing his rights, hence even defendants lacking culpability and acting in good faith should pay

attorneys' fees.  Defendants here failed to make an extremely strong showing of special circumstances....[6]

The Fifth Circuit remanded to permit this Court to enter a new fee award:

> Because the court erred in applying the special circumstances test in the case below, and because Harris County has now prevailed on one issue, we must vacate and remand the award of fees to allow the district court to award fees appropriate to plaintiffs' now partial success in both the district court as well as on appeal.[7]

Plaintiffs' request to recover their out-of-pocket expenses with interest, and ninety-five percent (95%) of their attorney's fees at current rates, is consistent with Plaintiffs' four victories and one loss in the Fifth Circuit's Rehearing Opinion; the inextricably interwoven nature of the evidence and issues in the record; and the governing Fifth Circuit and Supreme Court precedent below.

## III.   Plaintiffs present compelling proof of their aggregate fees, hours, and expenses from June of 2003 through the end of August 2008 and seek an award consistent with the Fifth Circuit's Rehearing Opinion.

### A.   Plaintiffs present their attorney fee evidence listing fees billed at "historic" rates, at current discounted rates, and at their standard current rates.

12.   From June 2003 through October 2008, Thompson & Knight, LLP has billed a total of **$401,768.50 in fees charged at "historic" rates**, including sums charged four and five years ago, to permit two individuals with small businesses to defend their First Amendment rights and the First Amendment rights of their fellow citizens.[8]  This includes **$54,226.86 in unpaid fees and expenses Martin lacked funds to pay,** which Plaintiffs' counsel has borne in

---

[6] *Pruett,* 499 F.3d at 417-418.

[7] *Id.* at 418.

[8] *See* Furlow Affidavit, at pgs. 29-30 ¶ 77, and **Exhibit 32**, a business record admissible under FED. R. EVID. 803(6), 807, and 1006.

contingency-fee style for the past four years, and **$7,940.20 for August 2008 fees and expenses**, in an as yet-unpaid invoice sent to Plaintiffs on October 14, 2008.[9]

13.    As set forth below, Plaintiffs' counsel has made a significant but necessary investment of time in this case that has precluded Plaintiffs' counsel from handling other matters for other clients – including clients who could afford to pay professional fees at higher rates. Thompson & Knight's attorneys and paralegals have invested some **1,325.3 hours of attorney and paralegal time** to this case over the past five years, from June 2003 through October 2008. Plaintiffs' spreadsheet lists reasonable historic rates for all attorneys.

14.    If this Court awards Plaintiffs' fees at discounted, current rates – for example, at the rate of $450.00 per hour for David A. Furlow's and $300.00 for Kevin Pennell's legal services, which Plaintiffs have been paying much of this year, with historic rather than current rates for other Thompson & Knight attorneys, Plaintiffs' attorney's fees would amount to **$541,152.92**.[10] Plaintiffs' spreadsheet lists reasonable rates for all attorneys.

15.    If this Court awards Plaintiffs' fees at Thompson & Knight LLP's standard, current rates, as Plaintiffs request – for example, at the rate of $510.00 per hour for David A. Furlow's legal services that other Thompson & Knight clients have paid in cases over the past several years, with similar current rates for other Thompson & Knight attorneys such as associate Kevin Pennell (former federal district law clerk), Plaintiffs' attorney's fees would amount to **$627,451.00**.[11] Plaintiffs' spreadsheet lists reasonable, current, standard rates for all attorneys.

---

[9] *See* Furlow Affidavit, at pg. 30 ¶ 77, and **Exhibit 32**, a business record admissible under FED. R. EVID. 803(6), 807, and 1006.

[10] *See* Furlow Affidavit, at pg. 30 ¶ 78, and **Exhibit 33**, a business record admissible under FED. R. EVID. 803(6), 807, and 1006.

[11] *See* Furlow Affidavit, at pg. 29 ¶ 75, and **Exhibit 34**, a business record admissible under FED. R. EVID. 803(6), 807, and 1006.

16.     As reflected in his resume and the exhibits identified in and attached to it, a reasonable current rate for Plaintiffs' lead counsel David A. Furlow's legal services would fall between his discounted current rate of $450.00 per hour and his standard current rate of $510.00 per hour.[12]  A summary of David A. Furlow's rates at Thompson & Knight during the past three years demonstrates that he has billed rates between $400 per hour and $510 per hour in 62 cases,[13]  including nine at his standard, $510.00 per hour rate; one at a discounted $495.00 hourly rate; and 35 files at a discounted $450.00 hourly rate.[14]

17.     In addition, Plaintiffs' counsel has incurred some $23,622.77 in out-of-pocket expenses throughout the history of this case from July 17, 2003 through the present.[15] Furthermore, while assisting Plaintiffs' counsel during the conduct of trial court legal research and briefing, Plaintiff Carl R. Pruett incurred $6,851.06 in LEXIS/NEXIS/Mead Database charges.[16]  Plaintiffs are entitled to recover those expenses, plus interest calculated on them at the prime rate, based on the authorities set forth below.  It is exceedingly complex to run prime rate interest calculations on hundreds of charges over a 5-year period (Plaintiffs estimate that the sum amounts to no more than $2,000.00), so Plaintiffs will attempt to reach a stipulated sum with Defendants' counsel.

---

[12] *See* Furlow Affidavit, at pg. 31 ¶ 82, and **Exhibit 35**, a business record admissible under FED. R. EVID. 803(6), 807, and 1006.

[13] *Id.*

[14] *Id.*

[15] *See* Furlow Affidavit, at pg. 29 ¶ 76, and **Exhibit 36**, a business record admissible under FED. R. EVID. 803(6), 807, and 1006.

[16] *See* Furlow Affidavit, at 29 ¶ 76, and **Exhibit 37**, a business record compilation of Carl R. Pruett's LEXIS charges admissible under FED. R. EVID. 806, 807 and 1006.

**B.    The U.S. Supreme Court has approved fee awards at current rates rather than historic rates in Civil Rights cases.**

18.    In *Missouri v. Jenkins*[17] and *Pennsylvania v. Delaware Valley Citizens Council,*[18] the Supreme Court declared that attorney's fee awards in Civil Rights Act cases should include compensation for delayed payment by governmental defendants.  The Fifth Circuit carries out *Jenkins'* and *Delaware Valley's* mandate by approving **current rates** rather than lower, "historic rates" that deprive parties and counsel of the fruits of their labor.  In *Hopwood v. University of Texas,* the Fifth Circuit approved using current rates to compensate plaintiffs for delayed payment by a governmental defendant in a Civil Rights Act case.[19]

**C.    Given Plaintiffs' five victories on appeal and the inextricably interwoven nature of the evidence and issues, this Court should award Plaintiffs all of their Fifth Circuit expenses and 95%+ of their fees at current rates.**

19.    Plaintiffs Pruett and Martin seek to recover ninety-five percent (95%) of their attorneys' time and all of their out-of-pocket expenses at current rates.   Their pleadings, discovery, depositions, research, briefing, objections, motions, responses, and attorney's fees were inextricably interwoven in advancing their claims, defeating the Board/County's defenses, and vindicating their and their potential customers' First Amendment rights.

20.    Plaintiffs successfully defended the bulk of this Court's First Amendment rulings on appeal.  Plaintiffs defeated the Board/County's claim that Plaintiffs' cross-appeal complaining of the insufficiency of their previous fee award was "untimely," that "special circumstances" absolved them of fee liability, and that Harris County owed nothing at all.

---

[17] 491 U.S. 274, 283-84 (1989.

[18] 483 U.S. 711, 716 (1987).

[19] 999 F.Supp. 872, 919 (W.D. Tex. 1998), *aff'd,* 236 F.3d 256, 277-79 (5th Cir. 2000), *rhg. and rhg. en banc denied,* 248 F.3d 1141 (5th Cir. 2001), *cert.* denied, 533 U.S. 929 (2001).

21.     While Plaintiffs did not prevail on *one* argument, about the unconstitutionality of the state statute banning after-hours calling, the same evidence, arguments, and briefs advanced their successful argument that the corresponding 24-hour restriction in the same part of the statute violated the First Amendment.

22.     The Board and County cannot recover (or offset) their fees and expenses on that claim for two reasons. **First,** they have abandoned, post-remand, the demand for attorney's fees they pled and sought prior to appeal. **Second,** different standards govern awards to prevailing plaintiffs and prevailing defendants. In *United States v. Mississippi*,[20] the Fifth Circuit noted the difference between plaintiffs and defendants:

> While plaintiffs prevailing under 42 U.S.C. § 1988 are entitled to attorneys' fees unless special circumstances would render an award unjust, *see Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402 (1968), prevailing defendants are entitled to attorney fees *only* when a plaintiff's underlying claim is frivolous, unreasonable, or groundless. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978). We review frivolity by asking whether the case was so lacking in merit that it was groundless, rather than whether the claim was ultimately successful. *See Jones v. Texas Tech. Univ.*, 656 F.2d 1137, 1145 (5th Cir.1981); *see also Plemer v. Parsons-Gilbane*, 713 F.2d 1127 (5th Cir.1983).[21]

Plaintiffs clearly prevailed on all but one of the significant issues and merit a major award.

**D.      Plaintiffs won the *certiorari* battle at the U.S. Supreme Court and should recover *all* of their Supreme Court fees and expenses at current rates.**

23.     Plaintiffs seek 100% of their time and expenses devoted to this case in the Supreme Court. The Fifth Circuit's Rehearing Opinion remained intact, so Plaintiffs won. Plaintiffs did not independently appeal the Fifth Circuit's rulings, but, instead, filed a <u>conditional</u> cross-petition for *certiorari*. That conditional cross-petition would have challenged the Fifth Circuit's late-night calls ruling <u>only</u> if the Board first secured a grant of *certiorari* on the

---

[20] 921 F.2d 604 (5th Cir. 1991, rhg. denied).

[21] *Id.* at 609; *see also Myers v. City of W. Monroe,* 211 F.3d 289, 292 (5th Cir. 2000) (same).

Board/County's *certiorari* petition. The Supreme Court denied the Board/County's petition, however, so Pruett's conditional arguments and supplemental record served to point out weaknesses and fully develop the factual record that undercut Defendants' *certiorari* petition.

       **E.**       **This Court's April 29, 2008 award of $400 per hour rates in the *Ibarra* case argues for lead-counsel to receive current rates here.**

      24.     After the Fifth Circuit remanded this case, this Court signed an April 29, 2008 opinion about attorney's fees in the *Ibarra* litigation. In that case, this Court ruled that a fee agreement does not determine what the court deems to be a reasonable fee for necessary services. "In light of all of the foregoing reasoning, the Court determines that an hourly rate of $400 per hour for lead attorney and $275 per hour for a second attorney are reasonable. A reasonable rate for employed specialized or advisory counsel is $540 per hour. As to paralegals and legal assistants, a reasonable fee is $110 per hour." *Id.* Plaintiffs Erik Ibarra, *et al.* recovered $1,328,470 in attorney's fees, $83,160 in paralegal fees, $15,648 in expert fees, $27,993 in deposition fees, $2,950 in civil process/subpoena fees, and travel costs to present a Fifth Circuit appeal in New Orleans, $1,547.

      25.     Plaintiffs' lead counsel David A. Furlow merits a higher rate based on substantial and prolonged First Amendment expertise, combined with real world clients who pay his current hourly rate of $510 per hour, or the discounted $450.00 per hour current rate Plaintiffs have been paying. Both rates are eminently reasonable in light of undersigned counsel's experience.

      26.     Plaintiffs' lead counsel David A. Furlow – the board-certified civil appellate specialist and First Amendment practitioner whose billings were most critical to Plaintiffs' success in this Court and on appeal – has served as a prosecutor; a partner in a small firm and a senior partner in a 400+ attorney, international law firm; a board-certified Civil Appellate Law specialist since 1989; the Chair and Newsletter Editor of the American Bar Association Tort,

Trial & Insurance Practice Section's Media, Defamation, and Privacy Law Committee; Vice

Chair of the A.B.A. Intellectual Property Committee; the organizer of the American Bar

Association's "Freedom of Speech 2007" and "Ordering Liberty in an International Economy

[2008]" seminars; an advocate in the U.S. Supreme Court; and the author of numerous law

review articles about the protection of First Amendment rights, including the 2008 Texas Tech

Law Review survey of Fifth Circuit, First Amendment cases.  Plaintiffs' other attorneys have

demonstrated excellence in their accomplishments and their work on this case.

    27.    Moreover, Plaintiffs' lead counsel David A. Furlow has an extensive track record

in constitutional cases.  Lead counsel David A. Furlow's experience in First Amendment cases

began in the early 1990s, including:

(1)    *Marco DuBose, et al., Plaintiffs v. Meyerland Community Improvement Association, Inc.,*
       No. 94-009758, in the 280th District Court of Harris County, where Harris County
       District Court Judge Tony Lindsay signed an October 14, 1994 final judgment that
       vindicated Plaintiff Marco DuBose's First Amendment rights, enjoined enforcement of a
       homeowner association's ban on residential display of political candidate signs, awarded
       $33,250 in trial court fees and expenses, and conditional awards of appellate fees, and
       where Plaintiffs' counsel played a leading role in the Legislature's enactment of
       amendments to the Texas Property Code protecting the First Amendment rights of
       homeowners[22];

(2)    *Cotham v. Garza,* 905 F.Supp. 389 (S.D. Tex. 1995), where Pruett and Martin's counsel
       persuaded U.S. District Court Judge Simeon Lake to strike down Texas Election Code
       Section 63.011(a), a Jim Crow election law, under the First Amendment[23];

(3)    *William V. Pentak, Plaintiff v. City of Piney Point Village, et al., Defendants,* No. 95-
       44986, where Pruett and Martin's counsel secured injunctive relief, a comprehensive
       settlement, and the amendment of the City of Piney Point's municipal sign ban in a
       constitutional challenge to Piney Point's ordinance banning residential "For Sale" signs[24];

---

[22] *See* **Furlow Affidavit** at pg. 8-9 and **Exhibit 7.**

[23] *See* **Furlow Affidavit** at pg. 6-7.

[24] *See* **Furlow Affidavit** at pg. 9-10 and **Exhibit 8.**

(4)  the successful defense of two businesses' right to display business signs despite the City of Houston's enactment of an ordinance banning them (by proving that the City never appointed a municipal sign board and never agreed to pay them fair compensation for their signage) in *N.W. Enterprises, Inc. v. City of Houston*, 27 F. Supp.2d 754 (S.D. Tex. 1998), *aff'd in pertinent part and rev'd in part*, 352 F.3d 162 (5th Cir. 2003), *rhg. granted in part and denied in pertinent part*, 372 F.3d 333 (5th Cir. 2004), *cert. denied sub nom. Ice Embassy, Inc. v. City of Houston*, 543 U.S. 958 (2004)[25]; and

(5)  the parallel, state court, First Amendment victory in *Pruett v. Harris County Bail Bond Board*, 249 S.W.3d 447 (Tex. 2008).

28.  Plaintiffs' record reflects their lead counsel's charging and receipt of $450.00-$510.00 in more than thirty cases.[26]  Awarding Plaintiffs' lead counsel his fees at his current rate (which varies from $450.00 to $510.00 per hour) is consistent with the rates Plaintiffs' law firm has charged bankruptcy trustees, bankruptcy trustee and liquidating plan agent Randy Williams, Ford Motor Company, General Motors Corporation, Honeywell, Inc., Mitsui, Inc., McAlester Fuel Company, and Mitsubishi Aircraft in other federal and state cases and appeals in Houston.

**F.  Other contemporaneous fee and expense awards support Plaintiffs' request for reimbursement of ninety-five (95%) percent of their attorney's fees using current rates and all of their out-of-pocket expenses.**

29.  Plaintiffs' fee request is consistent with other recent decisions from courts in Texas. In *Dehoyos v. Allstate Corporation*,[27] for example, U.S. District Court Judge Fred Biery awarded $500 to $550 per hour for senior and lead counsel; $350 to $450 per hour for other counsel and associate attorneys; and $130 to $200 per hour for legal assistants. The upper range is higher than the $510 per hour rate Plaintiffs will seek if settlement efforts fail.

30.  Doug Becker and Toni Hunter, the attorneys who represented the Board's intervenor-ally IFIC in this Court and the Fifth Circuit, as well as the Board's ally/intervenor

---

[25] *See* **Furlow Affidavit** at pg. 10-11.

[26] *See* **Furlow Affidavit** at pg. 5-6 and **Exhibit 35**.

[27] 240 F.R.D. 269 (W.D. Tex. 2007).

IFIC throughout the state court case and appeal, recently received a very large attorney's fee award in a state court First Amendment case against the State of Texas.[28]   In that strip-club First Amendment case, they convinced Travis County District Court Scott H. Jenkins to strike down the Texas "Pole Tax"[29] that imposed an admission fee on persons entering sexually oriented businesses pursuant to Subchapter B of the Chapter 47 of the Texas Business and Commerce Code.   Judge Jennings ruled on March 28, 2008 – the same day the Texas Supreme Court published its *Pruett* decision.   A copy of Judge Jenkins' March 28, 2008 judgment appears as **Exhibit 25** to David A. Furlow's affidavit.   Judge Jenkins' judgment reflects some of Mr. Becker's and Ms. Hunter's briefing, as reflected by their names on page 1 of his cover letter.

31.   Travis County District Court Judge Jenkins entered findings of fact and conclusions of law stating that it was reasonable and necessary for a successful First Amendment plaintiff to have incurred $320,000.00 in trial court fees during that short time, that $78,000.00 for an appeal to the Austin Court of Appeals, $42,000.00 for a petition for review to the Texas Supreme Court, $31,500.00 for Texas Supreme Court briefing on the merits, and $105,000.00 for prevailing in a First Amendment case in the U.S. Supreme Court.   The issues in that strip club case are much simpler than those in this case, and the length of the litigation – less than a year, as opposed to five years – was much less.[30]

32.   In addition, an order and a payment receipt from another prominent First Amendment case that originated in Judge Sim Lake's court – the so-called "Bible Monument" case – *Staley v. Harris County, Texas,* 332 F.Supp. 2d 1030 (S.D. Tex. 2004), *held to be mooted*

---

[28] *See* **Furlow Affidavit** at pg. 21-22 and **Exhibit 27**, p. 7 ¶ 52.

[29] The slang "Pole Tax" refers, in the SOB world, to the pole around which strippers gyrate.

[30] *See* **Furlow Affidavit** at pg. 21-22 and **Exhibit 27**, at 7-8 ¶¶ 52-53.

*by Harris County's voluntary action,* 485 F.3d 305 (5th Cir. 2007) (*en banc*), *cert. denied,* --

U.S. -- , 128 S. Ct. 650, 169 L. Ed. 2d 507 (U.S. July 23, 2007), supports Plaintiffs' fee request.

In that case, Harris County appealed from Judge Lake's final judgment concerning the

unconstitutionality of the Star of Hope Mission's large Bible monument.  That Bible monument

occupied a prominent position next to an entrance to the Harris County Courthouse until Harris

County employees removed it four days before *en banc* oral argument in the Fifth Circuit and

stored it, allegedly in connection with the renovation of the courthouse.

33.    **Exhibits 29** and **30,** which come from Plaintiff Kay Staley's counsel Randall

Kallinen in that case, support Plaintiffs' fee application here.  Plaintiffs' lead counsel here, David

A. Furlow, was requested to and prepared to offer expert witness attorney's fee opinions on

behalf of Kay Staley and Americans United for Separation of Church and State in that case.

Judge Lake's August 23, 2004 Order, **Exhibit 29,** directed Harris County to pay Plaintiff Kay

Staley's attorney $43,961.00 in attorney's fees and expenses, as well as post-judgment interest, a

sum Harris County subsequently paid.  On March 25, 2008, Plaintiff's counsel Randall L.

Kallinen received $395,000.00 (**Exhibit 30**) on behalf of his client Kay Staley and Americans

United for Separation of Church and State in satisfaction of "Kay Staley's remaining claim for

attorney's fees" – that is, additional, post-remand appellate fees and expenses – "in Civil Action

No. H-03-3411."   In short, Staley's attorneys recovered some $438,961.00 in that First

Amendment case where an ideologically-motivated non-profit corporation with salaried lawyers

based in Washington, D.C. – Americans United for Separation of Church and State – provided a

substantial share of the attorney's fees without incurring the expense of hiring outside counsel.

34.    For the past five years, Pruett, Martin, and their counsel have funded this case to

defend not only their own First Amendment rights but also those of citizens in need of bail.

35.     The Board and County attempted, early on, to intimidate Plaintiffs and chill their speech by proclaiming their intent to recover attorney's fees against them.  In their August 16, 2005 Response to Plaintiffs' Motion to Modify the Final Judgment's Award of Attorneys' Fees and Costs, for example, the Board and County asked for attorney fees and costs because Plaintiffs' § 1983 claims against them "were groundless…because Plaintiffs' § 1983 claim was groundless, Defendants could be arguably entitled to attorneys fees under § 1988.  *See, e.g., Walker v. City of Bogalusa,* 168 F.3d 237, 240 (5th Cir. 1999)."  But Plaintiffs' claims proved to be successful at trial and on appeal, leading Defendants to abandon their own fee demands.

36.     After granting Pruett's and Martin's motion for summary judgment on May 20, 2005, this Court requested an affidavit regarding the Bondsmen's attorney's fees and expenses. Pruett and Martin's counsel filed an itemized affidavit with exhibits on May 31, 2005 and later supplemented it to seek $197,895.73 in fees and expenses.  The Board objected generally to any award of fees, and to any award against the County, but only disputed only two categories of billing.  The Board challenged $20,085.00 in fees and expenses: $6,180.00 in fees for meetings with attorneys in the Attorney General's Office and for $13,905.00 in defending IFIC's appeal of the district court's denial of its intervention request.

37.     Only a small part of Plaintiffs' briefing focused on the one issue the Plaintiffs lost on appeal – the one about after-hours calling.  The "issues" Plaintiffs presented to the Fifth Circuit on page 1 of their June 27, 2006 Appellees' and Cross-Appellants' Brief addressed Texas Occupations Code Section 1704.109(b) generally, and not by specific reference to the prohibition on calling between 9:00 p.m. and 9:00 a.m., principally because that statutory restriction overlapped the other § 1704.109(b)(2) restriction on calls within 24 hours after arrest or

incarceration.[31]   Plaintiffs referred to the after-hours restriction briefly on page 49, page 49 footnote 139, and 51 of their Appellees' and Cross-Appellants' Brief in the Fifth Circuit.   At trial and on appeal, ***both*** sides focused on the unserved warrants restriction found at Texas Occupations Code § 1704.109(b)(*1*), not on the after-hours calling and 24-hours-after-arrest/incarceration restrictions in § 1704.109(b)(*2*).   The Board's Motion for Panel Rehearing and *Certiorari* Petition focused on the unserved-warrants issue, too.   In short, the vast majority of the argument, analysis, and briefing in this case – approximately ninety-five percent (95%) concerned issues other than the statutory provision banning calls after 9:00 p.m. and before 9:00 a.m.  It is therefore appropriate for this Court to review the evidence and award Plaintiffs ninety-five percent (95%) of their fees and all of their out-of-pocket costs in this case.

38.    Plaintiffs also seek recovery of the fees they, as prevailing plaintiffs, incur to recover their fees and expenses.  The rule is that courts must make just awards in Civil Rights Act cases to award counsel who act as private attorneys general to enforce the Constitution.[32]

### G.    Plaintiffs are entitled to recover prime-rate interest on all of their out-of-pocket expenses.

39.    In the previously-referenced *Hopwood* decision, District Judge Sparks awarded plaintiffs "travel expenses, lodging, phone calls, mailing expenses, and Fifth Circuit fees..." and interest calculated at the prime rate.[33]  Judge Sparks awarded "over $7,000 for the deposition costs and travel expenses related to the plaintiffs' expert witness at trial" after noting that "it is

---

[31] *See* Appellees' Brief, June 27, 2006, at 1.

[32] *See, e.g., Thompson v. Pharmacy Corp. of Am., Inc.,* 334 F.3d 1242, 1245 (11th Cir. 2003); *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1309 (11th Cir. 2001) ("A prevailing party is entitled to reasonable compensation for litigating a § 1988 award. Additionally, post-judgment advocacy may generally be included in a § 1988 award."); *Johnson v. Mississippi*, 606 F.2d 635, 638 (5th Cir. 1979) ("We conclude that attorney's fees may be awarded for time spent litigating the fee claim.").

[33] 999 F.Supp. at 922-923.

within the Court's discretion to include such expenses as pa[rt] of a reasonable attorney's fee..."[34]

40.     Judge Sparks also held that, "[t]he interest is calculated using the prime rate to compensate the plaintiffs for the delay in payment."[35] The Fifth Circuit affirmed and overruled motions for rehearing and rehearing *en banc*.[36] The Supreme Court denied *certiorari*,[37] leaving those interest awards intact. Plaintiffs request a similar award and present supporting evidence.[38] It is exceedingly complex to run prime rate interest calculations on hundreds of charges over a 5-year period, though. Plaintiffs currently estimate that their interest amounts to no more than $2,000.00. Plaintiffs will attempt to reach a stipulated agreement with Defendants' counsel to avoid asking this Court to run through lengthy calculations of relatively small interest amounts.

41.     Plaintiffs Carl R. Pruett and Scott Martin pray that this Court will grant this motion and award Plaintiffs a just award of their reasonable and necessary attorney's fees, including paralegal and expert fees, and costs, jointly and severally against Defendants Harris County Bail Bond Board and Harris County, and further request that this Court shall grant Plaintiffs all further relief, at law or in equity, to which they show themselves entitled.

---

[34] *Id.*

[35] *Hopwood,* 999 F.Supp. at 922 (citing *Alberti v. Klevenhagen,* 896 F.2d 927, 938 (5th Cir.), *vacated in part on other grounds,* 903 F.2d 352 (5th Cir. 1990)).

[36] 236 F.3d at 277-79 and 248 F.3d at 1141.

[37] 533 U.S. at 929.

[38] *See generally* **Furlow Affidavit** with **Exhibits**.

Respectfully submitted,

**THOMPSON & KNIGHT LLP**

By: _____

**David A. Furlow**
**Attorney in Charge**
State Bar No. 07555586
Federal I.D. No. 3435
Kevin Pennell
State Bar No. 24046607
Federal I.D. No. 583414
333 Clay Street, Suite 3300
Houston, Texas  77002
Telephone:  713-653-8653
Telecopier: 832-397-8253

**ATTORNEYS FOR PLAINTIFFS CARL
PRUETT AND SCOTT MARTIN**

## CERTIFICATE OF SERVICE

I certify that I served a true copy of the foregoing on opposing counsel by the Court's electronic filing system on this 17th day of October, 2008:

> Bruce Powers & Ed Mahar
> HARRIS COUNTY ATTORNEY'S OFFICE
> Counsel for Defendants Harris County Bail Bond Board & Harris County
> 1019 Congress, 15th Floor, Houston, Texas 77002

_____

David A. Furlow & Kevin Pennell